JOHN T. KEATING, ESQ.
Nevada Bar No. 6373
AARTI S. JHITA ESQ.
Nevada Bar No. 16895
KEATING LAW GROUP
9130 W. Russell Road, Suite 200
Las Vegas, Nevada 89148
jkeating@keatinglg.com
(702) 228-6800 phone
(702) 228-0443 facsimile
Attorneys for Plaintiff

KEATING LAW GROUP
9130 W. RUSSELL RD., SUITE 200
LAS VEGAS, NEVADA 89148

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BLUE HILL SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFTON GREEN, an individual; DOE EMPLOYEE, an Individual; D&S SERVICES, INC., a New Mexico Corporation; SILVER PACIFIC INVESTMENTS, INC., a Foreign Corporation doing business as SPI LOGISTICS; TF LOGISTICAL OPERATIONS, LLC, a Louisiana Limited Liability Company; BLAIZE PRESTON, a Louisiana Resident; DOES I through XXV, and ROE CORPORATIONS I through XXV, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff BLUE HILL SPECIALTY INSURANCE COMPANY ("BLUE HILL"), by and through its attorneys, KEATING LAW GROUP, alleges and claims as follows:

## PARTIES

1. Plaintiff BLUE HILL SPECIALTY INSURANCE COMPANY ("BLUE HILL"), is and was at all times relevant to these proceedings as a foreign corporation, incorporated in the State of Illinois licensed to do business in the State of Nevada with its principal place of business in

KEATING LAW GROUP
9130 W. RUSSELL RD., SUITE 200
LAS VEGAS, NEVADA 89148

Ohio.

2. Defendant CLIFTON GREEN (hereinafter "GREEN") was at all times relevant herein a resident of Louisiana who was injured in Nevada while working for Defendant TF LOGISTICAL OPERATIONS.

3. Defendant D&S SERVICES, INC. {hereinafter "D&S"), was at all times relevant herein a New Mexico corporation that transacted business in Clark County, Nevada.

4. Defendant SILVER PACIFIC INVESTMENTS was at all times relevant herein a foreign corporation d/b/a SPI LOGISTICS that transacted business in Clark County, Nevada and operates as a freight broker that arranges for the pick-up, delivery and transportation of heavy equipment throughout the United States.

5. Defendant TF LOGISTICAL OPERATIONS, LLC (hereinafter "TF LOGISTICAL"), was at all times relevant herein a Louisiana limited liability company that transacted business in Clark County, Nevada.

6. Upon information and belief, Plaintiff alleges Defendant BLAIZE PRESTON was at all times relevant herein a resident of Louisiana and owned, managed, controlled, operated, and is the alter ego of TF LOGISTICAL.

7. The true names and capacities of Defendants sued herein as DOES I through XXV, inclusive, and ROE CORPORATIONS I through XXV, inclusive and each of them are unknown to BLUE HILL, who therefore sues said Defendants by such fictitious names. BLUE HILL will seek to amend this Complaint to set forth the true names and capacities of said fictitiously named Defendants when the same has been fully ascertained.

## GENERAL ALLEGATIONS

8. Plaintiff realleges and repleads each and every allegation of the preceding paragraphs as though fully set forth herein.

9. Pursuant to a Complaint filed on July 25, 2024, in the Eighth Judicial District

KEATING LAW GROUP
9130 W. RUSSELL RD., SUITE 200
LAS VEGAS, NEVADA 89148

Court in Nevada, Case No. A-24-898442-C (the "underlying case"), GREEN claims he sustained injuries as a result of an incident which occurred on June 4, 2022, in Clark County, Nevada.

10. Per the Complaint filed in the underlying case, NEVADA SCAFFOLD and/or D&S hired SPI to arrange for the pick-up, delivery and transportation of the subject forklift from Nevada to New Mexico and SPI arranged for the transport of the Nevada forklift from its owner, NEVADA SCAFFOLD to a buyer in New Mexico to be delivered to D&S.

11. Per the Complaint filed in the underlying case, the agreement for the transport of the subject forklift called for the owner benefiting from the transport, NEVADA SCAFFOLD, to load the forklift onto the TF LOGISITCAL vehicle and TF LOGISTICAL would thereafter strap it down once loaded.

12. Per the complaint, GREEN, an employee of TF LOGISTICAL, was assigned to transport a 1995 Sky Trak Forklift owned by NEVADA SCAFFOLD to Defendant D&S SERVICES, a New Mexico corporation.

13. On the day of the incident, GREEN attempted to put the forklift on the bed of his trailer without any assistance. Upon placing the forklift on the trailer, the forklift overturned and crushed GREEN's legs.

14. BLUE HILL is the insurer for TF LOGISTICAL and specifically provides commercial auto coverage to TF LOGISTICAL.

15. GREEN submitted a bodily injury claim to Plaintiff BLUE HILL on or about July 17, 2023, Claim No. 23-7660011

16. BLUE HILL issued correspondence to TF LOGISTICAL explaining that coverage may be excluded under the policy as GREEN may have been considered in the course and scope of his employment for TF LOGISTICAL when the incident occurred.

17. GREEN filed suit against NEVADA SCAFFOLD, D&S SERVICES, SILVER PACIFIC

KEATING LAW GROUP
9130 W. RUSSELL RD., SUITE 200
LAS VEGAS, NEVADA 89148

INVESTMENTS, SPI LOGISTICS, TF LOGISTICAL, and BLAIZE PRESTON, asserting Negligence against all parties on July 25, 2024 in the Eighth Judicial District Court in Case No. A-24-898442-C.

THE BLUE HILL INSURANCE POLICY

18. At all times relevant, TF LOGISTICAL was insured with a Commercial Automobile Policy with Plaintiff BLUE HILL, Policy No. 04206611-0 with combined single limits of $1,000,000 for auto coverage and $1,000,000 in coverage for general liability.

19. The Policy was issued in Louisiana and pursuant to Louisiana law.

20. The terms and conditions of the Policy are governed under the laws of the State of Louisiana.

COMMERCIAL AUTO POLICY

21. The subject policy provides Liability Coverage as follows:

PART I – LIABILITY TO OTHERS

INSURING AGREEMENT - LIABILITY TO OTHERS

> Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury, property damage**, and **covered pollution cost or expense** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.
>
> **We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

22. This coverage is subject to the following definitions.

. . .

3. **"Bodily Injury"** means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

KEATING LAW GROUP
9130 W. RUSSELL RD., SUITE 200
LAS VEGAS, NEVADA 89148

. . .

5. **"Employee"** includes a **leased worker** and a stator employee. **Employee** does not include a **temporary worker.**

6. **"Insured Auto"** or **"your insured auto"** means:
   a. Any **auto** specifically described on the **declarations page**; or
   b. An additional **auto** for Part I – Liability to Others and/or Part II – Damage To Your Auto on the date **you** become the owner if:
      (i) **you** acquire the **auto** during the policy period shown on the **declarations page;**
      (ii) **we** insure all **autos** owned by **you** that are used in **your** business;
      (iii) no other insurance policy provides coverage for that **auto**; and
      (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

      If **you** add any coverage, increase **your** limits, or make any other changes to this policy during the 30-day period after **you** acquire an additional **auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes for the additional **auto** from the date **you** acquire the **auto.**

      With respect to Part I – Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

      With respect to Part II – Damage To Your Auto, if **we** provide coverage for an **auto you** acquire in addition to any **auto** specifically described in the **declarations page**, and the additional **auto** is:
      (i) a **private passenger auto, we** will provide the broadest coverage **we** provide for any **auto** shown on the **declarations page**; or
      (ii) any **auto** other than a **private passenger auto**, and **you** have purchased Physical Damage coverage for at least one **auto** other than a **private passenger auto, we** will provide the broadest coverage for which the newly

KEATING LAW GROUP
9130 W. RUSSELL RD., SUITE 200
LAS VEGAS, NEVADA 89148

acquired **auto** is eligible.

c. Any replacement **auto** on the date **you** become the owner if:
(i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
(ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and
(iii) no other insurance policy provides coverage for that **auto**.

If **we** provide coverage for a replacement **auto**, **we** will provide the same coverage for the replacement **auto** as **we** provide for the replaced **auto**. **We** will provide that coverage for a period of 30 days after **you** become the owner of such replacement **auto**. **We** will not provide any coverage after this 30-day period unless within this period **you** ask **us** to insure the replacement **auto**. If **you** add any coverage, increase **your** limits, or make any other changes to **your** policy during this 30-day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes.

. . .

15. **"Property damage"** means physical damage to, destruction of, or loss of use of, tangible property.

23. The policy in question also contains applicable exclusions as set forth below:

Coverage under this Part I, including **our** duty to defend, does not apply to:

. . .

3. **Worker's Compensation**
Any obligation for which an **insured** or an insurer of that **insured**, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

. . .

KEATING LAW GROUP
9130 W. RUSSELL RD., SUITE 200
LAS VEGAS, NEVADA 89148

5. **Employee Indemnification and Employer's Liability**
**Bodily injury** to:
a. An **employee** of any **insured** arising out of or within the course of:
(i) That **employee's** employment by any **insured**; or
(ii) Performing duties related to the conduct an any **insured's** business; or
b. The spouse, child, parent, brother or sister of that **employee** as a consequence of Paragraph a. above.

This exclusion applies:
a. Whether the **insured** may be liable as an employer or in any other capacity; and
b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to **bodily injury** to a domestic **employee** if benefits are neither paid or required to be provided under any workers' compensation, disability benefits, or similar law, or to liability for **bodily injury** assumed by the **insured** under an **insured contract.** For the purposes of this policy, a domestic **employee** is a person engaged in household or domestic work performed principally in connection with the residence premises.

6. **Fellow Employee**
**Bodily injury** to:
a. a fellow **employee** of an **insured** injured while within he course of the employment or while performing duties related to the conduct of **your** business.
b. the spouse, child, parent, brother, or sister of that fellow **employee** as a consequence of Paragraph a. above.

24. GREEN alleged in the underlying Complaint that TF LOGISITICAL was required to provide workers' compensation for the benefit of employees injured in the course and scope of their employment.

25. The underlying Complaint also clearly alleges that GREEN was an employee of TF LOGISTICAL at the time of the incident which caused the injury to GREEN and thus coverage is precluded from coverage pursuant to the workers' compensation exclusion.

26. The exclusion referenced above for Employee Indemnification and Employer's Liability also precludes coverage for the subject loss as GREEN was in the course and scope

KEATING LAW GROUP
9130 W. RUSSELL RD., SUITE 200
LAS VEGAS, NEVADA 89148

of his employment with TF LOGISTICAL at the time of the subject incident.

27. As a result, the Employee Indemnification and Employer's Liability exclusion would apply to preclude coverage for the subject incident.

28. The exclusion set forth above for fellow employees also applies to preclude coverage since GREEN is considered a fellow employee who was injured while within the course and scope of his employment.

29. As a result, the Fellow Employee exclusion would apply as well to preclude coverage.

## CHOICE OF LAW

30. Louisiana's choice of law rules were codified in the Louisiana Civil Code article 3515, *et seq*. An issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its laws were not applied to that issue. La CC art. 3515.

31. Generally, that state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state. La CC art. 3519.

32. The Louisiana Civil Code also includes a specific provision discussing the determination of which state laws apply to the interpretation of a contract in article 3537:

> "That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, **including the place of negotiation**, formation, and performance of the contract, the location of the object of the contract, **and the place of domicile**, **habitual residence**, or business of the parties; (2) the nature, type, and purpose of the contract; and (3**) the policies referred to in Article 3515,** as well as the

KEATING LAW GROUP
9130 W. RUSSELL RD., SUITE 200
LAS VEGAS, NEVADA 89148

> policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other."
>
> La. CC art. 3537 (*emphasis added*).

33. Additionally, Article 3543 discusses Louisiana's interest in issues of conduct and safety:

> "Issues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state or in another state whose law did not provide for a higher standard of conduct.
>
> In all other cases, those issues are governed by the law of the state in which the injury occurred, provided that the person whose conduct caused the injury should have foreseen its occurrence in that state."
>
> La. CC art. 3543.

34. Louisiana has a strong interest in protecting its residents. *Champagne v. Ward*, 893 So.2d 773, 777 (La. 2005). A contract involving a Louisiana resident's employment raises our state's policy interests. Louisiana has a strong policy reflected in the Workers' Compensation Act, La. R.S.§23:1020.1 *et seq.* (the "Act") for the protection of injured workers and their compensation. *Williams v. Morris Transp*., 184 So.3d 136, 41 (La.App. 2 Cir. 2015).

35. The *Williams* court, discussed the test set forth by the Act for the extension of Louisiana benefits to an employee injured while working outside Louisiana:

> "(1) If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this Chapter had such injury occurred within this state, such employee, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this Chapter, provided that at the time of such injury
>
> (a) his employment is principally localized in this state, or
>
> (b) **he is working under a contract of hire made in this state.**
>
> La. R.S. § 23:1035.1(1)."
>
> *Id.* at 138.

KEATING LAW GROUP
9130 W. RUSSELL RD., SUITE 200
LAS VEGAS, NEVADA 89148

36. TF LOGISTICAL, a Louisiana liability company, is GREEN's employer. See Complaint, 6:11-14. Plaintiff's contract for hire must have been made in Louisiana.

37. Louisiana's conflict of laws principles recognize the concept of "depecage," as La.C.C. arts. 3515 and 3542 use the term "issue." Depecage means using an issue-by-issue analysis which may result in laws of different states being applied to different issues in the same dispute.[1] *Rigdon v. Pittsburgh Tank & Tower Company, Inc.*, 682 So. 2d 1303, 1308 (La. App. 1 Cir. 1996).

38. The court in the current matter should apply Louisiana law to the specific issue concerning Plaintiff's exclusive remedy against TF LOGISTICAL. Louisiana Civil Code articles 3515, 3519 and 3537 weigh strongly in favor of the application of Louisiana law to the dispute between Plaintiff and TF LOGISTICAL.

39. GREEN is a Louisiana resident.

40. TF Logistical is a Louisiana limited liability company with its principal place of business in Denham Springs, Louisiana.

41. Although GREEN was injured in Nevada, he was working under the contract that he and TF LOGISTICAL confected in Louisiana. Louisiana's strong policy of protecting its residents and injured employees would be gravely impaired if employers could avoid their responsibilities under the Workers' Compensation Act whenever their employees are injured out of state.

42. Any interest Nevada may have in resolving the specific disputes between a Louisiana employer and employee is secondary to Louisiana's interests.

/ / /

/ / /

---

1 *See* Comment (d) to La. C.C. art. 3515.

KEATING LAW GROUP
9130 W. RUSSELL RD., SUITE 200
LAS VEGAS, NEVADA 89148

**ALL ISSUES OF COVERAGE OR LIABILITY UNDER THE POLICY SHOULD BE DETERMINED UNDER LOUISIANA LAW**

43. Louisiana also has a strong interest in regulating any insurance policies issued to its residents as codified in La. Revised Statutes § 22:868, which provides in pertinent part:

> A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any group health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement either:
>
> (1) Requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country.
>
> (2) Depriving the courts of this state of the jurisdiction or venue of action against the insurer.
>
> B. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement limiting right of action against the insurer to a period of less than twenty-four months next after the inception of the loss when the claim is a first-party claim, as defined in R.S. 22:1692, and arises under any insurance classified and defined in R.S. 22:47(6), (10), (11), (12), (13), (15), and (19) or to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code.
>
> C. Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.
>
> La. R.S. §22:868. See also, Velez v. Sentry Ins. Co. , 446 So.2d 408, 410 (La.App. 4 Cir. 1984).

44. Louisiana law must be the law applicable to the determination of all issues regarding the Blue Hills policy, including but not limited to its terms, conditions, limits, exclusions and coverage. The policy was delivered to the insured, TF LOGISTICAL in Louisiana. TF LOGISTICAL is a Louisiana limited liability company. GREEN is a Louisiana resident. Louisiana has the strongest interest in the issues regarding the interpretation of the policy's terms, conditions, exclusions, limits and exclusions.

/ / /

KEATING LAW GROUP
9130 W. RUSSELL RD., SUITE 200
LAS VEGAS, NEVADA 89148

**BLUE HILL COMMERCIAL GENERAL LIABILITY POLICY**

45. The Commercial General Liability Policy provides Liability Coverage as follows:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**Insuring Agreement**

1. **We** will pay those sums, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, that the **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. **We** will have the right and duty to defend the **insured** against any **suit** seeking those damages. **We** may, at **our** discretion, investigate any **occurrence** and settle any claim or **suit** that may result. However, the amount **we** will pay for damages is limited as described in Section II – Limits of Liability.
No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

46. This coverage is subject to certain exclusions.

Coverage under Coverage A does not apply to:

. . .

4. **Workers' Compensation and Similar Laws**

Any obligation for which an **insured** or an insurer of that **insured, even** if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

5. **Employer's Liability**

**Bodily injury** to:
a. Any employee of any **insured** arising out of or within the course of:
(i) That employee's employment by any **insured**; or
(ii) Performing duties related to the conduct of any **insured's** business; or
b. The spouse, child, parent, brother or sister of that employee as a consequence of paragraph a. above.

This exclusion applies:
a. Whether the **insured** may be liable as an employer or in any other capacity; and
b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

KEATING LAW GROUP
9130 W. RUSSELL RD., SUITE 200
LAS VEGAS, NEVADA 89148

> This exclusion does not apply to liability assumed by the **insured** under an **insured contract.**

47. The above-referenced exclusion for workers' compensation precludes any coverage for this loss since GREEN was in the course and scope of employment at the time of the subject incident.

48. The above-referenced exclusion for employer's liability precludes coverage for the loss since GREEN was in the course and scope of his employment at the time of the subject incident.

49. The applicable commercial policy further supplies the following language:

> If you pay your premium when due, we will provide the insurance described in this policy.
>
> DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS
>
> For coverage to apply under this policy, you or the person seeking coverage must promptly report each accident or loss even if you or the person seeking coverage is not at fault. Refer to your policy documents for the claims phone number.
>
> You or the person seeking coverage must also obtain and provide us the names and addresses of all persons Involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.
>
> If you or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the accident, or if theft or vandalism has occurred, you or the person seeking coverage must notify the police within 24 hours or as soon as practicable. However, for purposes of uninsured motorist coverage when the owner or operator of a vehicle involved in the accident cannot be identified, you or the person seeking coverage must notify the police no more than 30 days after the accident.
>
> A person seeking coverage must:
> 1. cooperate with us in any matter concerning a claim or lawsuit;
> 2. provide any written proof of loss we may reasonably require;
> 3. allow us to take signed and recorded statements, including sworn statements and examinations under oath, which we may conduct outside

KEATING LAW GROUP
9130 W. RUSSELL RD., SUITE 200
LAS VEGAS, NEVADA 89148

the presence of you, a relative, or any person claiming coverage, and answer all reasonable questions we may ask as often as we may reasonably require;
4. promptly call us to notify us about any claim or lawsuit and send us any and all legal papers relating to any claim or lawsuit;
5. attend hearings and trials as we require;
6. submit to medical examinations at our expense by doctors we select as often as we may reasonably require;
7. authorize us to obtain medical and other records;
8. take reasonable steps after a loss to protect the insured auto from further loss. We will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
9. allow us to have access to an insured auto or other auto involved in an accident or loss and to have it inspected and appraised before its repair or disposal; and
10. authorize us access to your business or personal records as often as we may reasonably require.

50. The subject incident occurred on August 4, 2022.

51. TF LOGISTICAL did not report the accident to BLUE HILL until July 27, 2023.

52. TF LOGISTICAL did not report the accident in a timely manner as required by the policy supplied above

53. As a result, BLUE HILL has been prejudiced due to untimely notice and as a result, coverage is precluded for the subject incident.

**GREEN'S INJURIES DID NOT ARISE FROM THE OPERATION, MAINTENANCE, OR USE OF AN INSURED VEHICLE**

54. Louisiana jurisprudence has given a broad interpretation to the words "arising out of the… use of the automobile." *Ursin v. Webb,* 945 So.2d 734, 736 (La. App. 5 Cir. 2006), *writ denied*, 948 So.2d 152 (La. 2007); *citing U.S. Fidelity v. Burris*, 240 So.2d 408, 409 (La. App. 2nd Cir. 1970). The totality of the circumstances surrounding or leading up to an accident should be examined in determining if the accident arose out of the "use" of the automobile. Id. By looking to what part the automobile played in the entire scheme, the courts can

KEATING LAW GROUP
9130 W. RUSSELL RD., SUITE 200
LAS VEGAS, NEVADA 89148

determine if there is coverage, and if so, how far it will be extended. *Id*. Each case must depend on its facts according to the part the automobile played in the scheme. *Id*.

55. To conclude that an injury arose out of the use of the automobile, a court must find the vehicle to be essential to the theory of liability. *Lucey v. Harris*, 490 So.2d 416, 419 (La. App. 5th Cir.), *writ denied*, 496 So.2d 327 (La. 1986) (*emphasis added*). The *Lucey* court evaluated the "arising-out-of-use" provision under an automobile liability policy when a decedent's widow sued a taxicab driver and his insurer for her husband's death after the taxicab's passenger shot him. *Id*. at 418. The court granted summary judgment in the insurer's favor, finding that the tortfeasor's use of the taxicab was only incidental to the injuries sustained by the decedent, and the accident did not flow from the use of the vehicle within the meaning of the insurance policy. *Id*. at 421. Louisiana courts have consistently refused to extend the "arising-out-of-use" provision of the policies to instances that involved gunshots and physical attacks that occurred in a vehicle or in conjunction with the use of a vehicle and in which the issue was whether coverage existed under the respective automobile liability policies. *Id*. at 420.

56. The Commercial Auto Policy listed the low trail trailer on its coverage schedule.

57. GREEN was injured while he was driving the forklift up on the trailer.

58. While the trailer was part of the injury process, GREEN has not argued that it caused or contributed to his injury.

59. In his complaint, GREEN only asserts 2 (two) causes of action, both for negligence.

60. In the first cause of action, GREEN asserts that NEVADA SCAFFOLD and Doe Employee were negligent in failing to load the forklift onto Plaintiff's trailer and/or TF LOGISTICAL, SILVER PACIFIC and D&S were negligent in failing to inform NEVADA SCAFFOLD of its obligation to load the forklift.

KEATING LAW GROUP
9130 W. RUSSELL RD., SUITE 200
LAS VEGAS, NEVADA 89148

61. The second cause of action asserts that TF LOGISTICAL, Blaize Preston, Does XI-XV and Roe Corporations XI-XV were negligent in failing to train GREEN to know that he should not load the forklift, failed to train him to load the forklift and failed to obtain workers' compensation insurance.

62. GREEN's injuries were unrelated to the "operation, maintenance or use" of the insured vehicle. GREEN's complaint lacks any reference to such a relationship and as a result, no coverage exists under the applicable BLUE HILL policies.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Relief)**

63. BLUE HILL repeats and re-alleges the allegations contained in Paragraphs 1 through 30 as through fully set forth herein.

64. BLUE HILL has reserved all of its rights under the above-referenced Policy for the allegations against GREEN and TF LOGISTICAL.

65. An actual dispute and judicial controversy exists between BLUE HILL and all Defendants concerning the application and interpretation of the terms and conditions of the above-referenced Policy.

66. An actual dispute and judicial controversy exist between BLUE HILL and the Defendants as to whether the claims asserted by GREEN are covered under the terms and conditions of the above-referenced Policy as to TF LOGISTICAL.

67. Therefore, BLUE HILL is entitled to an Order from this Court declaring the rights, duties and obligations of the parties under the Policy,

WHEREFORE, BLUE HILL prays for the following:

1. An order from the Court declaring that there is no coverage available for GREEN under the subject policies;

2. An order from the court declaring that BLUE HILL is not required to defend and/or indemnify GREEN;
3. For attorney's fees and costs incurred herein; and
4. For such other and further relief as the Court deems just and proper.

DATED this 27th day of October, 2025.

KEATING LAW GROUP

*/s/ John T. Keating*
John T. Keating
Nevada Bar No. 6373
Aarti S. Jhita
Nevada Bar No. 16895
9130 W. Russell Road, Suite 200
Las Vegas, NV 89148
Attorneys for Plaintiff

KEATING LAW GROUP
9130 W. RUSSELL RD., SUITE 200
LAS VEGAS, NEVADA 89148